NOT FOR PUBLICATION                                                                             CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.R. HOMA, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civ. No. 06-2985 (JAP) |
| v. | OPINION |
| AMERICAN EXPRESS COMPANY and AMERICAN EXPRESS CENTURION BANK, | |
| Defendants. | |

PISANO, District Judge.

Plaintiff G.R. Homa ("Homa" or "Plaintiff"), a holder of an American Express Blue Cash Card (the "Blue Cash Card") purporting to represent a class of cardholders from the State of New Jersey, brought this action against American Express Company ("AEC") and American Express Centurion Bank ("AECB") (together "Defendants") alleging violation of the New Jersey Consumer Fraud Act arising out of the Blue Cash Card "cash back" rewards program. Currently before the Court is Defendants' Motion to Compel Arbitration and Dismiss Action in Favor of Arbitration, or Alternatively, Stay Action Pending Arbitration. The Court has jurisdiction under 28 U.S.C. § 1332 and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Court grants Defendants' motion and dismisses Plaintiff's Complaint in favor of arbitration which is to proceed on an individual basis in accordance with the terms of the parties' contract.

**I. BACKGROUND**

The dispute presently before the Court does not concern the substance of Plaintiff's allegations; instead, the parties raise the threshold question of whether Plaintiff's claims are subject to a valid and enforceable arbitration provision. Nevertheless, the Court sets forth the following brief summary of the facts giving rise to this action. In or about September of 2003, AEC unveiled a promotional rewards program called "Blue Cash" in which users of the Blue Cash Card could earn up to 5% cash back on purchases made with the Blue Cash Card. (*See* Amended Complaint ("Compl.") ¶¶ 1-2, 12). Under the terms of the rewards program, Defendants used a tiered structure to calculate the cash rebate that each cardholder received. (*See* Compl. ¶ 16-17). In accordance with that structure, a cardholder's eligibility for the full 5% cash back reward depended upon the total amount of qualifying purchases the cardholder made with the Blue Cash Card. (*Id.*)

On February 8, 2004, AECB issued a Blue Cash Card to Homa, a resident of Essex County, New Jersey. (*See* Compl. ¶ 9). AECB is a Utah industrial bank engaged in the business of, *inter alia*, issuing American Express credit cards. (Compl. ¶ 11). AEC is a New York corporation and the ultimate parent of AECB. (Compl. ¶ 10). Upon issuance of Plaintiff's Blue Cash Card, Defendants mailed Plaintiff a copy of the Agreement Between American Express Credit Cardmember and American Express Centurion Bank (the "Cardmember Agreement"), which set forth the terms and conditions that govern each cardholder's account. (Declaration of Gillen Clements ("Clements Decl.") ¶ 4, Ex. A). The Cardmember Agreement, as originally provided to Plaintiff, included an arbitration provision (the "Arbitration Provision") requiring arbitration of any claims arising out of the Cardmember Agreement or Plaintiff's account upon

the election of either Plaintiff or Defendants: "Any Claim shall be resolved, upon election by you or us, by arbitration pursuant to this Arbitration Provision . . . ." (Clements Decl., Ex. A at 2-3).

The Cardmember Agreement further provided that there would be no class-action mechanism available to resolve arbitrated claims:

> If either party elects to resolve a Claim by arbitration, that Claim shall be arbitrated on an individual basis. There shall be no right or authority for any Claims to be arbitrated on a class action or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers or other persons similarly situated.

(*Id.*) The Cardmember Agreement also included a choice-of-law provision designating Utah state law as the law applicable to disputes arising out of the Cardmember Agreement:

> This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the state of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah.

(Clements Decl., Ex. A at 3).

Pursuant to a clause in the Arbitration Provision that permitted Defendants to "change the terms or add new terms to [the Cardmember] Agreement at anytime, in accordance with applicable law," (Clements Decl., Ex. A at 3), Defendants included a "Notice of Changes to Your Agreement" in Plaintiff's March 1, 2005 billing statement. The Notice indicated that Defendants were making "important changes" to the Cardmember Agreement. (Clements Decl., Ex. B at 5, 6). In one such change, Defendants amended the first sentence of the "Definitions" subsection of the Arbitration Provision to read as follows: "As used in this Arbitration Provision, the term 'Claim' means any claim, dispute, or controversy between you and us arising from or relating to

3

you Account . . ., except for the validity, enforceability or scope of this Arbitration Provision or the Agreements." (Clements Decl., Ex. B at 6).

Purporting to represent a class of New Jersey consumers who obtained a Blue Cash Card on or after September 30, 2003, as well as a subclass of New Jersey cardholders who carried a monthly balance on their cards, Plaintiff alleges that Defendants misrepresented the actual terms of the rewards program and failed to credit his account with the promised amount of cash back. (Comp. ¶¶ 28-29).[1] Citing the above clauses from the Arbitration Provision, Defendants argue that the Cardmember Agreement requires Plaintiff to submit his claims to arbitration and that such arbitration be conducted on an individual basis. Accordingly, Defendants request that the Court issue an order compelling Plaintiff to arbitrate his claims on an individual basis. Further, Defendants seek a dismissal of Plaintiff's action, or a stay of the action pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.

Plaintiff argues that New Jersey state law applies to this dispute because the application of Utah law—to the extent it would result in the enforcement of the Arbitration Provision—would violate a fundamental public policy of New Jersey and that the Arbitration Provision, and in particular the class-arbitration waiver, is unenforceable under New Jersey law. In the alternative, and in the event that Utah law applies to this dispute, Plaintiff contends that the class-arbitration waiver is unconscionable and thus unenforceable. To the extent that the Court finds the class-arbitration waiver invalid and the remainder of the Arbitration Provision

---

[1] Initially, Plaintiff alleged multiple claims for relief and purported to represent a nationwide class of cardholders. On December 1, 2006, however, Plaintiff filed an Amended Complaint in which he redefined the class, limiting it to residents of New Jersey, and asserted a single claim under the New Jersey Consumer Fraud Act. (Compl. ¶¶ 28-29; 37-47).

enforceable, Plaintiff requests that the Court direct the arbitrator to adjudicate this case on a class-wide basis.[2]

## II. DISCUSSION

### A. Standard of Review under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  A motion to dismiss should be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004).  Although the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff, *see Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), the Court is not required to accept as true mere "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino, Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quotation omitted).  The parties agree that their dispute regarding the validity of the Arbitration Provision presents a threshold legal issue that is appropriate for resolution under Rule 12(b)(6).

### B. Analysis

The ultimate issue before the Court is whether the Arbitration Provision, including the class-arbitration waiver, is enforceable thereby requiring Plaintiff to pursue his claim against

---

[2] Plaintiff argues in passing that the Arbitration Provision does not apply to his claims because he asserts only statutory claims.  Plaintiff fails to recognize, however, that the Arbitration Provision, by its very terms, applies to any claims concerning Plaintiff's Blue Cash Card account, including statutory claims, and that there is no exception in the FAA for statutory claims.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA.").

Defendants in arbitration on an individual basis. To resolve that ultimate issue, however, the Court must determine (1) whether the Arbitration Provision is valid and enforceable under the FAA; (2) which interested state's law—New Jersey's or Utah's—applies to this dispute; and (3) whether the Arbitration Provision is valid and enforceable under the applicable state law. The Court's findings, discussed below in greater detail, are as follows.

First, the Arbitration Provision and class-arbitration waiver are enforceable under the FAA, which reflects a strong policy in favor of enforcing arbitration agreements. Second, the parties' contractual selection of Utah law is controlling, and thus Utah law applies to the instant dispute, because (1) Utah has a substantial relationship to the parties and the transaction, and (2) the application of Utah state law does not violate a fundamental public policy of the State of New Jersey. Third, despite Plaintiff's contention that the class-arbitration waiver is unconscionable under Utah law, the Court finds that it is valid and enforceable under Utah law. Therefore, the Court grants Defendants' motion, dismisses Plaintiff's action in favor of arbitration, and orders Plaintiff to pursue his claim in arbitration on an individual basis in accordance with the terms of the parties' contract.[3]

---

[3] Plaintiff's argument that his claim for misrepresentation is beyond the scope of the Arbitration Provision is without merit. The Arbitration Provision covers "any claim, dispute or controversy between you and us arising from or relating to your Account [or] this Agreement." (Clements Decl., Ex. B at 2). In the Court's view, the scope of that clause is sufficiently broad to cover Plaintiff's claim. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurances that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

### 1. The Arbitration Provision Is Enforceable Under the FAA

Section 2 of the FAA provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985).  "The purpose of the Act was to abolish the common law rule that arbitration agreements were not judicially enforceable."  *Cost Bros., Inc.*, 760 F.2d at 60.  The FAA, therefore, "preempts state law that might 'undercut the enforceability of arbitration agreements.'"  *Id.* (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

The United States Supreme Court has recognized that there is a "federal policy favoring arbitration" and has mandated that "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be rigorously enforce[d]"); *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997).  The FAA requires courts to enforce private arbitration agreements "according to their terms," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The United States Supreme Court, as well as the Courts of Appeals, routinely enforces arbitration provisions contained in standard form contracts, including consumer contracts and

7

consumer credit agreements.[4]  Further, several courts, including the United States Supreme Court, have enforced arbitration agreements despite an express waiver of class-action arbitration procedures.[5]  Plaintiff does not argue that the Arbitration Provision is unenforceable under the FAA, nor could he.  In light of the strong federal policy favoring arbitration and the long line of cases in which federal courts have enforced arbitration agreements, there is no doubt that the Arbitration Provision is enforceable as a matter of federal law.

**2.  Utah State Law Applies to the Parties' Dispute**

Notwithstanding the fact that the Arbitration Provision is enforceable under the FAA, the Court must determine whether any state law contract defenses invalidate the agreement.  *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration

---

[4] *See, e.g.*, *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553 (7th Cir. 2003); *Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302 (4th Cir. 2001); *Johnson v. W. Suburban Bank*, 225 F.3d 366 (3d Cir. 2000).

[5] *See Gilmer*, 500 U.S. at 32 (stating that lack of class-action relief in arbitration did not preclude enforcement of the arbitration agreement); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005) ("[P]recluding class action relief will not have the practical effect of immunizing [defendants].  The Arbitration Agreements permit [plaintiff] and other consumers to vindicate all of their substantive rights in arbitration."); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 180 n.9 (2d Cir. 2004) (noting that federal courts have "consistently" enforced arbitration provisions in the context of class action lawsuits); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (rejecting challenge to arbitration agreement based on inability to arbitrate on a class basis); *Livingston*, 339 F.3d at 558-59 (holding that an arbitration agreement precluding class claims must be enforced according to its terms); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) ("[Plaintiff's] inability to bring a class action . . . cannot by itself suffice to defeat the strong congressional preference for an arbitral forum."); *W. Suburban Bank*, 225 F.3d at 377-79 (holding that federal statutory claims are arbitrable even if class-action mechanism is unavailable).

agreements without contravening § 2."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state law principles that govern the formation of contracts."); *Perry*, 482 U.S. at 492 n.9 (noting that contract defense, such as unconscionability, to enforceability of arbitration agreement is matter of state law). In order to make that determination, however, the Court first must decide which state's law applies to this dispute.

The Cardmember Agreement governing Plaintiff's account includes a Utah choice-of-law provision. In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state. *See Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002). Under New Jersey law, which mirrors the choice-of-law rules set forth in the Restatement (Second) of Conflict of Laws § 187,

> [A] choice of law provision will not be honored: (1) if the state chosen has no substantial relationship to the parties or the transaction [and there is no other reasonable basis for the parties' choice]; or (2) application of the law chosen would conflict with a fundamental public policy of a state having a greater interest in a determination of a particular issue and [the law] of such state would be applicable in the absence of the choice of law provision under the governmental-interest analysis.

*Prudential Ins. Co. of Am. v. Nelson*, 11 F. Supp. 2d 572, 578 (D.N.J. 1998); *see also* Restatement (Second) of Conflict of Laws § 187 (1971).

There is no dispute that the parties' contractual choice of law satisfies the first prong of the test. AECB is a Utah industrial bank, conducts all business in the State of Utah, and maintains no out-of-state branches. (Clements Decl., ¶ 2). Further, pursuant to the terms of the Cardmember Agreement, Utah is the place of contracting and AECB holds Plaintiff's account in Utah. Accordingly, Utah has a substantial relationship to the parties and the transaction, and

there is a reasonable basis for the parties' choice of law. *See* Restatement (Second) of Conflict of Law § 187, cmt. f (1971) ("When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business.").

Turning to the second prong, Plaintiff argues that the choice-of-law provision is unenforceable because the application of Utah law would violate New Jersey's public policy against enforcing class-arbitration waivers in contracts of adhesion.[6] In support of this argument, Plaintiff cites *Muhammad v. County Bank of Rehoboth Beach, Del.*, 189 N.J. 1, 912 A.2d 88, 101 (N.J. 2006), in which the Supreme Court of New Jersey held that a class-arbitration waiver in a consumer arbitration agreement was unconscionable. Before addressing Plaintiff's fundamental public policy argument, the Court notes that the Restatement test does not necessarily require the Court to determine whether the choice-of-law provision contravenes a fundamental public policy of New Jersey. Instead, the test obligates the Court to assess whether the parties' choice of law violates a fundamental public policy of the state whose law would apply "in the absence of an effective choice of law by the parties." Restatement (Second) Conflict of Laws § 187 (1971). Though the parties agree that the principles set forth sections 6 and 188 of the Restatement should guide the Court's governmental-interest analysis, they disagree as to the correct result of that analysis: Plaintiff contends that relevant principles point to New Jersey law, while Defendants argue that those principles favor application of Utah law.

---

[6] In making this argument, Plaintiff assumes, but does not concede, that the class-arbitration waiver is enforceable under Utah state law.

Even assuming that New Jersey state law would apply in the absence of an effective choice-of-law provision, however, the parties' choice of Utah law controls because application of that law does not violate any fundamental public policy of New Jersey. Although the *Muhammad* Court deemed unconscionable a class-arbitration waiver in a consumer arbitration agreement, the *Muhammad* decision does not establish a fundamental public policy against the enforcement of class-action waivers in arbitration agreements. In fact, *Muhammad* confirms that class-arbitration waivers are not "per se unenforceable" under the public policy of New Jersey. *Id.* at 101; *see also Delta Funding Corp. v. Harris*, 189 N.J. 28, 912 A.2d 104, 110 (2006) ("New Jersey's public policy . . . favors enforcement of valid agreements to arbitrate."). Further, as the New Jersey Supreme Court has recognized, a finding of unconscionability requires a "fact-sensitive analysis in each case" and is necessarily limited to the particular arbitration agreement at issue. *Delta Funding Corp.*, 912 A.2d at 111; *Muhammad*, 912 A.2d at 98-101 (applying the *Rudbart* factors to class-arbitration waiver). As such, *Muhammad* does not stand for the proposition that there is a fundamental public policy in New Jersey against the enforcement of class-arbitration waivers. Therefore, the parties' choice of law provision is controlling and Utah state law applies to this dispute.

### 3. The Arbitration Provision is Enforceable Under Utah State Law

Under Utah law, a credit agreement is enforceable if:

> (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e). Amendments to credit card agreements, including the addition

or modification of arbitration provisions, made pursuant to change-in-terms notices are also valid and enforceable. *See* Utah Code Ann. § 70C-4-102(2)(b) ("A creditor may change an open-end consumer credit contract in accordance with this section to include arbitration or other alternative dispute resolution mechanism."); Utah Code Ann. § 70-C-4-102(1) ("For purposes of this section, 'change' includes to add, delete, or otherwise change a term of an open-end consumer credit contract."). Further, Utah law permits the inclusion of class-action waivers in consumer credit agreements. *See* Utah Code Ann. § 70-C-4-105 ("[A] creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract"); *see also* Utah Code Ann. § 70-C-3-104 (allowing class-action waivers in closed-end agreements).

Plaintiff does not dispute that the original Cardmember Agreement, including the Arbitration Provision, and the amendments thereto comply with Utah state law. Nor does Plaintiff dispute that he accepted the terms of the Cardmember Agreement and its amendments. Indeed, Plaintiff's use of the Blue Cash Card after receiving the Cardmember Agreement constituted an acceptance of its terms, notwithstanding the fact that he never signed the Cardmember Agreement. (Clements Decl., Ex. A at 1 ("When you keep, sign or use the Card issued to you . . . you agree to the terms of this Agreement."); *see also* Compl. ¶ 18; Clements Decl., ¶ 5, Ex. B at 1, Ex. C at 1). Similarly, Plaintiff accepted the terms in the amended Cardmember Agreement by continuing to use his Blue Cash Card after receiving the change-in-terms provision. *See Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410, 1418 (M.D. Ala. 1998) (applying Utah law and enforcing an arbitration provision contained in an amendment to a credit card agreement because plaintiff maintained account after the effective date of the

arbitration clause).

Plaintiff argues, however, that the class-arbitration waiver contained in the Arbitration Provision is unconscionable under Utah law and, thus, unenforceable. The crux of Plaintiff's argument is that Utah courts, which have not addressed the issue of whether class-arbitration waivers are unconscionable, would rely on cases from related state and federal jurisdictions, such as the United States Court of Appeals for the Ninth Circuit and the California Supreme Court. Plaintiff further contends that because courts in those jurisdictions have found similar waivers in adhesion contracts unconscionable, so too would the Utah courts. This argument is flawed for many reasons.

First, although Utah courts occasionally look to other jurisdictions for guidance on issues where there is a lack of relevant Utah caselaw, that approach is limited to situations in which a Utah court is construing a Utah rule or law to which there is an analogous rule or law in a related jurisdiction. For instance, it is not uncommon for Utah courts, faced with a novel evidentiary issue, to rely on federal caselaw applying a federal counterpart to one of the Utah Rules of Evidence. *See State v. Gomez*, 63 P.3d 72, 79 n.5 (Utah 2002) ("Although the Federal Rules of Evidence are a separate body of law from the Utah Rules of Evidence, if the reasoning of a federal case interpreting or applying a federal evidentiary rule is cogent and logical, we may freely look to that case, absent a Utah case directly on point, when we interpret or apply an analogous Utah evidentiary rule.") (quotation omitted). Although most states, if not all, recognize the contract defense of unconscionability and the elements of the defense may not differ greatly by jurisdiction, the determination of whether the class-arbitration waiver is unconscionable requires the Court to look no further than Utah caselaw on unconscionability.

Second, as discussed above, there is Utah statutory law that directly addresses the issue presented here. Third, there is no lack of Utah state law concerning the contract defense of unconscionability. Indeed, the lack of Utah caselaw on whether the particular type of clause at issue here is unconscionable does not preclude this Court from applying Utah unconscionability law to the Arbitration Provision and class-arbitration waiver. For these reasons, the Court finds no merit in Plaintiff's argument that Utah courts would look to the law of other jurisdictions to resolve the issue presented here.

Under Utah law, "[a] party claiming unconscionability bears a heavy burden." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998). Indeed, Utah law "enables parties to freely contract, establishing terms and allocating risks between them . . . [and] even permits parties to enter into unreasonable contracts or contracts leading to a hardship on one party." *Id*. Utah courts will find a contract unconscionable where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* (quotation omitted). Utah courts use a two-pronged analysis to determine whether a contract is unconscionable. *Id.*

The first prong, substantive unconscionability, "focuses on the contents of an agreement, examining the relative fairness of the obligations assumed." *Id.* (quotation omitted). The substantive unconscionability inquiry requires an assessment of whether the terms of the challenged contract are "so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an overall imbalance in the obligations and rights imposed by the bargain . . . according to the mores and business practices of the time and place." *Id.* (quotation omitted). "Even if a contract term is unreasonable or more advantageous to one party, the contract, without

more is not unconscionable—the terms must be so "one-sided as to oppress . . . an innocent party." *Id.* (quotation omitted). The second prong, procedural unconscionability, concerns the "negotiation of the contract and the circumstances of the parties." *Id.* at 403. The relevant inquiry is whether there is an "overreaching by a contracting party occupying an unfairly superior bargaining position." *Id.* Under Utah law, the existence of substantive unconscionability alone is sufficient to render a contract unconscionable, but "procedural unconscionability without any substantive imbalance" generally will not support a finding of unconscionability. *Id.* at 402.

      Plaintiff fails to show, or even argue, that the Arbitration Provision suffers from procedural or substantive unconscionability under Utah law. Notwithstanding Plaintiff's apparent concession, two points on this issue deserve mention. First, although the boilerplate terms of the Cardmember Agreement, including the class-arbitration waiver, were presented in the context of a take-it-or-leave-it transaction, Plaintiff was free to reject Defendants' offer and open a credit account with one of any number of credit card issuers. Further, Plaintiff had ample opportunity to read and understand the terms of the Cardmember Agreement, including the class-arbitration waiver, which appeared in large bold font, prior to opening his Blue Cash Card account. Thus, it cannot be said that Plaintiff lacked a meaningful choice or was "compelled to accept the terms of the agreement." *Id.* at 403. Second, although class arbitration would likely be the most advantageous strategy for the purported class to pursue its claims against Defendants, the class-arbitration waiver does not preclude Plaintiffs from seeking relief against Defendants for the claims they now assert. Nor does the waiver exculpate Defendants for any potential liability. Thus, the terms of the parties' contract is not "so one-sided as to oppress" Plaintiff. *Id.* at 402.

Moreover, it cannot be said that the enforcement of the class-arbitration waiver would be so unconscionable that "no decent, fairminded person would view the results without being possessed of a profound sense of injustice," or that enforcement of the waiver would "shock the conscience." *Woodhaven Apts. v. Washington*, 942 P.2d 918, 925 (Utah 1997). At most, the class-arbitration waiver creates an advantage for Defendants and imposes a hardship on Plaintiff. That, however, is insufficient to support a finding of unconscionability. *Ryan*, 972 P.2d at 403. Therefore, the Court finds that the class-arbitration waiver is enforceable under Utah law and dismisses this action in favor of arbitration, which is to proceed on an individual basis.

### III. CONCLUSION

For the reasons expressed above, the Court grants Defendants' motion and dismisses Plaintiffs' Complaint with prejudice pursuant to Rule 12(b)(6). An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: May 31, 2007